**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **1 TOM PLUMBER GLOBAL INC.** | : | Case No.: |
| 5300 Dupont Circle, Suite A | : | |
| Milford, Ohio 45150 | : | Judge |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **BLUE RIDGE PLUMBING AND DRAIN LLC** | : | |
| 174 Bradley Branch Road, Ste 3 | : | |
| Arden, NC 28704 | : | |
| | : | |
| Serve also: | : | |
| Josh Warren, Registered Agent | : | **VERIFIED COMPLAINT FOR** |
| 174 Bradley Branch Road, Ste 3 | : | **TEMPORARY RESTRAINING ORDER,** |
| Arden, NC 28704 | : | **PRELIMINARY INJUNCTION,** |
| | : | **PERMANENT INJUNCTION, AND** |
| and | : | **OTHER RELIEF** |
| | : | |
| **BLUE RIDGE SERVICE GROUP LLC** | : | |
| 174 Bradley Branch Road, Suite 4 | : | |
| Arden, NC 28704 | : | |
| | : | |
| Serve also: | : | |
| Joshua Warren, Registered Agent | : | |
| 174 Bradley Branch Road, Suite 4 | : | |
| Arden, NC 28704 | : | |
| | : | |
| and | : | |
| | : | |
| **WARREN RESTORATION, LLC** | : | |
| 9 Legend Drive | : | |
| Arden, NC 28704 | : | |
| | : | |
| Serve also: | : | |
| Josh Warren, Registered Agent | : | |
| 9 Legend Drive | : | |
| Arden, NC 28704 | : | |
| | : | |
| and | : | |

**TLC PROPERTIES LLC**                                    :
201 Brandon Road                                         :
Hendersonville, NC 28739                                 :
                                                         :
        Serve also:                            :
        Warren Restoration, Registered Agent   :
        174 Bradley Branch Road, Suite 5       :
        Arden, NC 28704                        :
                                                         :
        Serve also:                            :
        Warren Restoration, Registered Agent   :
        201 Brandon Road                       :
        Hendersonville, NC 28739               :
                                                         :
and                                                      :
                                                         :
**TLC SERVICE GROUP, LLC**                                :
174 Bradley Branch Road, Suite 5                         :
Arden, NC 28704                                          :
                                                         :
        Serve also:                            :
        Toni Warren, Registered Agent          :
        174 Bradley Branch Road, Suite 5       :
        Arden, NC 28704                        :
                                                         :
and                                                      :
                                                         :
**PIEDMONT PLUMBING AND DRAIN,**                          :
**LLC**                                                   :
9 Legend Drive                                           :
Arden, NC 28704                                          :
                                                         :
        Serve also:                            :
        Joshua Warren, Registered Agent        :
        201 Brandon Road                       :
        Hendersonville, NC 28739               :
                                                         :
and                                                      :
                                                         :
**JOSH WARREN**                                           :
201 Brandon Road                                         :
Hendersonville, NC 28739                                 :
                                                         :
and                                                      :
                                                         :
                                                         :

2

**TONI WARREN**       :
201 Brandon Road      :
Hendersonville, NC 28739   :
               :
and             :
               :
**MICHAEL PERDUE**      :
4 Eola Avenue        :
Asheville, NC 28806     :
               :
and             :

**TRINA ELLISON**
174 Bradley Branch Rd, Ste 3
Arden, NC 28704

     Defendants.

  For its Verified Complaint against Defendants, Blue Ridge Plumbing and Drain LLC, Blue Ridge Service Group LLC, Warren Restoration, LLC, TLC Properties LLC, TLC Service Group, LLC, Piedmont Plumbing and Drain, LLC, Josh Warren and Toni Warren, Michael Perdue, and Trina Ellison (collectively, "Defendants"), Plaintiff 1 Tom Plumer Global Inc. hereby states as follows:

## THE PARTIES

  1.  Plaintiff 1 Tom Plumber Global Inc. ("1 Tom Plumber") is an Ohio Corporation with its principal place of business in Hamilton County, Ohio, and is a wholly owned subsidiary of 1 Tom Plumber Brand, Inc., an Ohio Corporation.

  2.  Defendant Blue Ridge Plumbing and Drain LLC ("Blue Ridge Plumbing") is a North Carolina limited liability corporation with its principal place of business in Arden, North Carolina, and upon information and belief, its sole member is Defendant Josh Warren.

3.     Defendant Blue Ridge Service Group LLC ("Blue Ridge Service") is a North Carolina limited liability corporation with its principal place of business in Arden, North Carolina, and upon information and belief, its members are Defendants Josh Warren and Toni Warren.

4.     Defendant Warren Restoration, LLC ("Warren Restoration") is a North Carolina limited liability corporation with its principal place of business in Arden, North Carolina, and upon information and belief, its sole member is Defendant Josh Warren.

5.     Defendant TLC Properties LLC ("TLC Properties") is a North Carolina limited liability corporation with its principal place of business in Hendersonville, North Carolina, and upon information and belief, its members are Defendants Josh Warren and Toni Warren.

6.     Defendant TLC Service Group, LLC ("TLC Service") is a North Carolina limited liability corporation with its principal place of business in Arden, North Carolina, and upon information and belief, its sole member is Defendant Toni Warren.

7.     Defendant Piedmont Plumbing and Drain, LLC ("Piedmont Plumbing") is a North Carolina limited liability corporation with its principal place of business in Arden, North Carolina, and upon information and belief, its members are Defendants Josh Warren and Toni Warren.

8.     Upon information and belief, Defendant Josh Warren is a citizen of North Carolina.

9.     Upon information and belief, Defendant Toni Warren is a citizen of North Carolina.

10.     Upon information and belief, Defendant Michael Perdue is a citizen of North Carolina.

11.     Upon information and belief, Defendant Trina Ellison is a citizen of North Carolina.

12.     Upon information and belief, at all relevant times, Defendants Josh Warren and/or Toni Warren (collectively, the "Warren Defendants") were the owners and/or managers of Blue Ridge Plumbing.

4

13.     Upon information and belief, at all relevant times, the Warren Defendants were the owners, founders, and/or managers of Blue Ridge Service.

14.     Upon information and belief, at all relevant times, Josh Warren was the owner, president, and/or manager of Warren Restoration.

15.     Upon information and belief, at all relevant times, the Warren Defendants were the owners, president, vice president, and/or managers of TLC Properties.

16.     Upon information and belief, at all relevant times, Toni Warren was the owner, president, and/or manager of TLC Service.

17.     Upon information and belief, at all relevant times, the Warren Defendants were the owners, president, vice president, and/or managers of Piedmont Plumbing.

18.     Blue Ridge Plumbing, Blue Ridge Service, Warren Restoration, TLC Properties, TLC Service, and Piedmont Plumbing are collectively referred to as the "Defendant Businesses."

19.     Upon information and belief, at all relevant times, Michael Perdue was an employee of and the on-site manager for the 1 Tom Plumber franchise operated by the Warren Defendants, by and through Blue Ridge Plumbing, in and around Asheville, North Carolina (the "1 Tom Plumber Asheville Location").  Upon further information and belief, at all relevant times, Michael Perdue was an employee of Blue Ridge Service, Warren Restoration, TLC Properties, TLC Service, and/or Piedmont Plumbing.

20.     At all relevant times, at all relevant times, Trina Ellison was an employee of and the Director of Financial Operations for the 1 Tom Plumber Asheville Location.  Upon further information and belief, at all relevant times, Trina Ellison was an employee of Blue Ridge Service, Warren Restoration, TLC Properties, TLC Service, and/or Piedmont Plumbing.

## JURISDICTION AND VENUE

21. 1 Tom Plumber brings this action pursuant to the Defend Trade Secrets Act ("DTSA") at 18 U.S.C. § 1836, et seq. This Court possesses subject matter jurisdiction over 1 Tom Plumber's trade secrets claim as it arises under the laws of the United States within the meaning of 28 U.S.C. § 1331.

22. This Court possesses supplemental jurisdiction over 1 Tom Plumber's remaining claims pursuant to 28 U.S.C. § 1367.

23. Jurisdiction also is proper in this Court due to the diversity of citizenship between the parties and that the amount in controversy exceeds $75,000 as required by 28 U.S.C. 1332.

24. By entering into the Franchise Agreement and the 1 Tom Plumber Franchise Termination Agreement ("Termination Agreement"), the Warren Defendants and Blue Ridge Plumbing waived all objections they may have to this Court's exercise of personal jurisdiction over them. True and accurate copies of the Franchise Agreement and the 1 Tom Plumber Franchise Termination Agreement are attached hereto as Exhibits 1 and 2, respectively.

25. Venue in this jurisdictional district is proper pursuant to the agreement of the Warren Defendants and Blue Ridge Plumbing as set forth in the Franchise Agreement and the Termination Agreement.

26. Venue in this jurisdictional district also is proper pursuant to 28 USC § 1391(b)(1).

## BACKGROUND FACTS

27. Generally, 1 Tom Plumber offers the opportunity to establish and operate a drain cleaning and full-service plumbing business (the "Franchised Business") at a single, defined location within a specific and defined primary operating area using 1 Tom Plumber methods of

operation that include its standards for the performance of services and operation of the Franchised business (the "System Standards").

28. To ensure brand quality and consistency throughout its franchised locations, 1 Tom Plumber allows its franchisees, after signing the franchise agreement, access to the Franchised System, which includes but is not limited to distinct, unique and proprietary marks and trade dress, products, presentation styles and services, know-how, methods of operation, identification, décor, furnishings, equipment, training, service, production, technology, marketing, advertising, promotion and development materials, including but not limited to: (1) plans and specifications for interior and exterior signs, designs, layouts, and color schemes; (2) methods, techniques, formats, systems, product and service preparation instructions, specifications, procedures, information, trade secrets, sales and marketing programs; (3) methods of business operations and management; (4) System Standards; (5) the Operations Manual; and (6) knowledge and experience regarding the operation and franchising of 1 Tom Plumber franchises. *See* Exhibit 1, § 54(i).

29. None of the trade secret, proprietary, and confidential information, including but not limited to the above, is available to the public, nor is it made available to any franchisee unless and until the franchisee signs the franchise agreement, which includes confidentiality provisions. 1 Tom Plumber's trade secret, proprietary, and confidential information derives independent value from not being generally known.

30. In addition to receiving the above trade secret, confidential, and proprietary information, and after the franchise agreement is signed, each franchisee is required to attend and participate in a training program which includes classroom and on-the-job training on topics including, but not limited to, manual review, market introduction, general manager recruitment, equipment and vehicle selection, materials selection, software training, 1 Tom Plumber values,

marketing and referral generation, sales, employee and crew management, team training, client service and quality control, after hours, office administration, field- and office-use software, 1 Tom Plumber service delivery standards, and general and financial management. None of the training material is available to the public, nor is it made available to any franchisee unless and until the franchisee signs the franchise agreement.

31.     A typical 1 Tom Plumber franchise offers professional, prompt, and punctual drain cleaning and plumbing services focused on emergency services and repairs for commercial and residential properties ("Plumbing Services"). 1 Tom Plumber's methods for emergency drain cleaning and full-service plumbing updates traditional industry approaches with modern marketing and pricing models.

32.     The plumbing market is highly competitive, generally mature, and well developed. 1 Tom Plumber franchises compete with national, regional, and local businesses including company owned and franchised chains as well as independently owned plumbing businesses. However, 1 Tom Plumber believes the emergency and rapid response segment of drain cleaning and plumbing is relatively unique, especially when incorporating 1 Tom Plumber's equipment, technology, and customer service-focused model. 1 Tom Plumber believes that its equipment, technology, and customer service-focused model, as well as its brand commitment to professional, punctual, and prompt services, differentiate a Franchised Business in the marketplace and provide a significant advantage over other plumbing businesses offering traditional approaches to drain cleaning and plumbing services.

33.     When a franchisee signs a franchise agreement for a Franchised Business, it pays a non-refundable initial franchise fee. *See* Exhibit 1, § 5(a). Thereafter, other fees include, but are not limited to, a weekly Royalty Fee, a monthly Population Fee, and a weekly Brand Fund

Contribution. *See* Exhibit 1, § 5(b)-(d). The weekly Royalty Fee and weekly Brand Fund Contribution are determined based on the franchisee's gross sales during the preceding week. *See* Exhibit 1, § 5(i).

34. Upon termination of a franchised 1 Tom Plumber business, the franchisee must return all trade secret, confidential, and proprietary information, including but not limited to the above, provided to the franchisee by 1 Tom Plumber. *See* Exhibit 1, § 33(a).

### BLUE RIDGE PLUMBING'S ASHEVILLE, NORTH CAROLINA FRANCHISE

35. On January 27, 2023, 1 Tom Plumber and Blue Ridge Plumbing entered into a franchise agreement, as modified and/or clarified by Addendum dated January 27, 2023 (collectively, the "Franchise Agreement"), wherein Blue Ridge Plumbing acquired the right to operate the 1 Tom Plumber Asheville Location. *See* Exhibit 1.

36. With the tools and training provided by 1 Tom Plumber, including but not limited to the Systems Standards and Operations Manual, as well as training in 1 Tom Plumber's methods, techniques, formats, systems, product and service preparation instructions, specifications, procedures, information, trade secrets, sales and marketing programs, methods of business operations and management, the Warren Defendants, through Blue Ridge Plumbing, developed substantial knowledge of 1 Tom Plumber's operations.

37. As a 1 Tom Plumber franchisee, the Warren Defendants, by and through Blue Ridge Plumbing, had access to 1 Tom Plumber's System Standards, Operations Manual, training, service, production, technology, marketing, advertising, promotion and development materials, and other trade secret, proprietary and confidential technical, financial, economic, and business data.

38. The Warren Defendants, by and through Blue Ridge Plumbing, utilized and were trained on 1 Tom Plumber's trade secret and proprietary Systems Standards and Operation Manual,

which was developed in-house by 1 Tom Plumber and which provides it with a substantial advantage in providing plumbing services throughout the United States.

39.     Michael Perdue, as the on-site manager for 1 Tom Plumber Asheville Location, also utilized and was trained on 1 Tom Plumber's trade secret, proprietary and confidential information, including but not limited to the Systems Standards and Operation Manual, which were developed in-house by 1 Tom Plumber and provide 1 Tom Plumber with a substantial advantage in providing Plumbing Services throughout the United States.

40.     Through their role as franchisee, the Warren Defendants, by and through Blue Ridge Plumbing, were taught everything they needed to know about 1 Tom Plumber's Franchised System, including but not limited to the System Standards, Operations Manual, and above-described trade secret, proprietary, and confidential information.

41.     Through his role as on-site manager, Michael Perdue was taught everything he needed to know about 1 Tom Plumber's Franchised System, including but not limited to the System Standards, Operations Manual, and above-described trade secret, proprietary, and confidential information.

42.     Michael Perdue and the Warren Defendants, by and through Blue Ridge Plumbing, became intimately familiar with 1 Tom Plumber's proprietary assets and became the beneficiaries of years of goodwill built up on behalf of 1 Tom Plumber.

43.     All knowledge by the Warren Defendants, by and through Blue Ridge Plumbing, regarding 1 Tom Plumber's proprietary assets was obtained as a result of their role as franchisee with 1 Tom Plumber, and all knowledge by Michael Perdue regarding 1 Tom Plumber's proprietary assets was generated by and through his role as on-site manager for the 1 Tom Plumber Asheville Location.

44.     As a result of the foregoing, Michael Perdue and the Warren Defendants, by and through Blue Ridge Plumbing, gained access to and specifically acquired information and records that collectively revealed trade secret, proprietary, and confidential information regarding 1 Tom Plumber's System Standards, Operations Manual, training, service, production, technology, marketing, advertising, promotion, and development materials, and other technical, financial, economic, and business data.

45.     Over many years, 1 Tom Plumber has invested significant time, resources, and expense to create and protect its trade secret, proprietary, and confidential information.

46.     1 Tom Plumber's efforts in this regard were necessary to create, as well as maintain, a significant business presence throughout the United States and so as to effectively compete against other companies that provide residential and/or commercial plumbing services.

47.     1 Tom Plumber has developed its trade secret, proprietary, and confidential information independently and it is not known to 1 Tom Plumber's competitors.

48.     1 Tom Plumber protects its trade secret, proprietary, and confidential information by restricting access to such trade secret, proprietary, and confidential information to only those who have signed a franchise agreement.

49.     1 Tom Plumber also requires its franchisees execute a Franchise Agreement, such as the one that the Warren Defendants, by and through Blue Ridge Plumbing, signed, which includes confidentiality and non-competition provisions.

50.     1 Tom Plumber further requires the on-site manager to execute a Management Confidentiality and Non-Competition Agreement ("Management Agreement"), such as the one Michael Perdue signed, which includes confidentiality and non-competition provisions.

51. None of the other employees of a 1 Tom Plumber franchise are allowed access to 1 Tom Plumber's trade secret, proprietary, and confidential information, including but not limited to 1 Tom Plumber's System Standards, Operations Manual, training, service, production, technology, marketing, advertising, promotion, and development materials, and other technical, financial, economic, and business data.

<u>**THE FRANCHISE AGREEMENT**</u>

52. On January 27, 2023, the Warrens, by and through Blue Ridge Plumbing, and as part of their role as franchisee of the 1 Tom Plumber franchised business operating in and around Asheville, North Carolina, executed the Franchise Agreement. *See* Exhibit 1.

53. The Warren Defendants personally guaranteed the performance of Blue Ridge Plumbing pursuant to the terms of the Franchise Agreement and, therefore, the Warren Defendants are personally and jointly and severally liable for the amounts that Blue Ridge Plumbing owes to 1 Tom Plumber. *See* Personal Guaranty, a true and accurate copy of which is attached hereto in Exhibit 1 at C-2.

54. The Franchise Agreement granted Blue Ridge Plumbing the right, license, and privilege to operate a 1 Tom Plumber franchise, and to use 1 Tom Plumber's trade secret, proprietary, and confidential information, including but not limited to 1 Tom Plumber's System Standards, Operations Manual, training, service, production, technology, marketing, advertising, promotion, and development materials, and other technical, financial, economic, and business data, to provide Plumbing Services in and around Asheville, North Carolina. *See* Exhibit 1, § 2(a).

55. Per the terms of the Franchise Agreement, and during its operation of a 1 Tom Plumber business, Blue Ridge Plumbing agreed not to engage, either directly or indirectly, in any competing business that provides Plumbing Services; and the Franchise Agreement further

restricts Blue Ridge Plumbing, for a two (2) year period, from competing with 1 Tom Plumber by engaging in a competing business that provide Plumbing Services within: (i) 25 miles from the nearest boundary of the Operating Area in and around Asheville, North Carolina if Blue Ridge Plumbing has less than five years of plumbing experience; (ii) 40 miles from the nearest boundary of the Operating Area in and around Asheville, North Carolina if Blue Ridge Plumbing has more than five years of plumbing experience; or (iii) within any other franchisee's operating area existing or being developed. *See* Exhibit 1, § 11.

56. The Franchise Agreement provides in pertinent part as follows:

**11. <u>COVENANTS NOT TO COMPETE</u>. YOU ACKNOWLEDGE THAT THE NATURE OF THE PLUMBING SERVICES BUSINESS PERMITS A LICENSED PLUMBER TO PROVIDE THEM TO BUSINESS AND RESIDENTIAL CUSTOMERS IN A LARGE GEOGRAPHIC AREA FROM A SINGLE CENTRAL OFFICE. DURING THE TERM, YOU MAY NOT ENGAGE, EITHER DIRECTLY OR INDIRECTLY THROUGH ANY FINANCIAL OR BENEFICIAL INTEREST IN ANY OTHER PERSON, IN ANY COMPETING BUSINESS, OTHER THAN A UNIT LICENSED BY US. FOR A PERIOD OF TWO YEARS AFTER THE TERMINATION OR EXPIRATION OF THIS AGREEMENT FOR ANY REASON, YOU MAY NOT ENGAGE IN ANY COMPETING BUSINESS, OTHER THAN A UNIT LICENSED BY US, WITHIN YOUR OPERATING AREA, WITHIN 25 MILES FROM THE NEAREST BOUNDARY OF YOUR OPERATING AREA IF YOU HAVE FEWER THAN 5 YEARS OF PLUMBING EXPERIENCE, OR WITHIN 40 MILES FROM THE NEAREST POINT OF YOUR OPERATING AREA IF YOU HAVE MORE THAN 5 YEARS OF PLUMBING EXPERIENCE, OR WITHIN ANY FRANCHISEE'S OPERATING AREA EXISTING OR THEN BEING DEVELOPED AT THE TIME OF TERMINATION, AS THEN LISTED ON OUR WEBSITE, AVAILABLE FROM US IN WRITING OR IN THE MANUAL, OR ANY DIRECTORY WE PROVIDE TO YOU. WE MAY REDUCE THE DURATION AND/OR GEOGRAPHIC SCOPE OF THIS PROVISION BY WRITTEN NOTICE TO YOU FOR APPLICABLE LAW. YOU WILL NOT EMPLOY OR SEEK TO EMPLOY ANY INDIVIDUAL WHO, AT THE TIME, CURRENTLY WORKS OR WORKED DURING THE PRECEDING THREE MONTHS FOR ANY OF OUR OTHER LICENSEES OR FRANCHISEES OR FOR US, EXCEPT WITH THE CONSENT OF THE AFFECTED LICENSEE OR FRANCHISEE OR WITH OUR CONSENT (AS APPLICABLE). WE WILL NOT EMPLOY OR SEEK TO EMPLOY ANY INDIVIDUAL WHO, AT THE TIME, CURRENTLY WORKS OR**

**WORKED DURING THE PAST THREE MONTHS FOR YOU, EXCEPT WITH YOUR CONSENT.**

\* \* \*

**54. <u>DEFINITIONS</u>. UNLESS THE CONTEXT OF THEIR USE IN THIS AGREEMENT REQUIRES OTHERWISE, THE FOLLOWING WORDS AND PHRASES HAVE THE FOLLOWING MEANINGS WHEN USED IN INITIALLY-CAPITALIZED FORM IN THIS AGREEMENT.**

\* \* \*

(d) <u>Competing Business</u> means any business that (i) offers for sale Plumbing Services; or (ii) in its entirety so resembles the trade dress, service style and products that comprise the distinguishing features of the Franchised System so as to create a likelihood of consumer confusion or dilution of the Proprietary Marks.

\* \* \*

(i) Franchised System means the distinctive, unique and Proprietary Marks and trade dress, products, presentation styles and services, know-how, methods of operation, identification, décor, furnishings, equipment, training, service, production, technology, marketing, advertising, promotion and development that we may designate in written or electronic form or through usage from time to time that define and distinguish a Unit, including (without limitation) (1) plans and specifications for interior and exterior signs, designs, layouts and color schemes; (2) methods, techniques, formats, systems, product and service preparation instructions, specifications, procedures, information, trade secrets, sales and marketing programs; (3) methods of business operations and management; (4) System Standards; (5) the Operations Manual; and (6) knowledge and experience regarding the operation and franchising of 1-Tom-Plumber Units.

\* \* \*

(r) <u>Operating Area</u> means the geographic area described on Attachment A.

(s) Operations Manual means the manual or collection of materials in written or electronic form which we designate from time to time as containing the System Standards, specifications, procedures, policies, methods of operating the Franchised Unit, other elements of the Franchised System and any information designated in this Agreement for inclusion or modification in the Operations Manual.

\* \* \*

(w) <u>Plumbing Services</u> means the design, installation, construction, replacement, service, repair, alteration, or modification of pipes and fixtures and drain cleaning for commercial and residential properties.

* * *

(y) <u>Proprietary Marks</u> means the registered and unregistered distinctive and characteristic trade names, domain names, trademarks, service marks, logotypes, and trade dress elements that we designate in written or electronic form or through usage from time to time as prescribed for use with the Franchised System.

* * *

(aa) System Standards means the standards for the Franchised Unit and using the Franchised System published in the Operations Manual and elsewhere, including but not limited to standards for design, furnishings, fixtures and equipment, use and display of the Proprietary Marks, operations, technology and any other standards, policies, rules and procedures we promulgate about Franchised System operation and usage.

* * *

**Attachment A**
**Transaction Details**

* * *

4. <u>Operating Area</u>: See Franchise Contract Data Sheet fully executed on December 28, 2022.

* * *

(Emphasis in original).

57.     Per the terms of the Franchise Agreement, Blue Ridge Plumbing also agreed not to use any 1 Tom Plumber trade secret, proprietary, and confidential information, including but not limited to 1 Tom Plumber's System Standards, Operations Manual, training, service, production, technology, marketing, advertising, promotion, and development materials, and other technical, financial, economic, and business data, in any business or in any capacity for the benefit of any person except as permitted by the Franchise Agreement or another written agreement with 1 Tom Plumber.  *See* Exhibit 1, § 12.

58.     The Franchise Agreement provides in pertinent part as follows:

12.     **CONFIDENTIAL INFORMATION. YOU ACKNOWLEDGE YOU HAVE NO INTEREST WHATSOEVER IN THE FRANCHISED SYSTEM EXCEPT THE LICENSE IN THIS AGREEMENT. YOU ACKNOWLEDGE THAT THE FRANCHISED SYSTEM CONSTITUTES OUR PROPRIETARY INFORMATION INCLUDING SOME CONFIDENTIAL INFORMATION AND THAT THE USE OR DUPLICATION OF THE FRANCHISED SYSTEM OTHER THAN AS PERMITTED UNDER THIS AGREEMENT WILL CONSTITUTE AN UNFAIR METHOD OF COMPETITION. YOU WILL NOT USE THE FRANCHISED SYSTEM IN ANY BUSINESS OR ANY CAPACITY FOR THE BENEFIT OF ANY PERSON EXCEPT AS PERMITTED UNDER THIS AGREEMENT OR ANOTHER WRITTEN AGREEMENT WITH US. YOU WILL TAKE ALL APPROPRIATE ACTIONS TO PRESERVE THE CONFIDENTIALITY OF ALL CONFIDENTIAL INFORMATION. ACCESS TO CONFIDENTIAL INFORMATION SHOULD BE LIMITED TO PERSONS WHO NEED THE CONFIDENTIAL INFORMATION TO PERFORM THEIR JOBS AND ARE SUBJECT TO YOUR GENERAL POLICY ON MAINTAINING CONFIDENTIALITY AS A CONDITION OF EMPLOYMENT OR WHO HAVE FIRST SIGNED A CONFIDENTIALITY AGREEMENT IN THE FORM ATTACHED TO THIS AGREEMENT, INCLUDED IN THE OPERATIONS MANUAL OR OTHERWISE ACCEPTABLE TO US. YOU WILL NOT PERMIT COPYING OF CONFIDENTIAL INFORMATION (INCLUDING, AS TO COMPUTER SOFTWARE, ANY TRANSLATION, DECOMPILING, DECODING, MODIFICATION OR OTHER ALTERATION OF THE SOURCE CODE OF SUCH SOFTWARE). YOU WILL USE CONFIDENTIAL INFORMATION ONLY FOR THE UNIT AND TO PERFORM UNDER THIS AGREEMENT. UPON TERMINATION (OR EARLIER, AS WE MAY REQUEST), YOU SHALL RETURN TO US ALL ORIGINALS AND COPIES OF THE OPERATIONS MANUAL, POLICY STATEMENTS AND CONFIDENTIAL INFORMATION "FIXED IN ANY TANGIBLE MEDIUM OF EXPRESSION," WITHIN THE MEANING OF THE U.S. COPYRIGHT ACT, AS AMENDED. YOUR OBLIGATIONS UNDER THIS SUBSECTION COMMENCE WHEN YOU SIGN THIS AGREEMENT AND CONTINUE FOR TRADE SECRETS (INCLUDING COMPUTER SOFTWARE WE LICENSE TO YOU) AS LONG AS THEY REMAIN SECRET AND FOR OTHER CONFIDENTIAL INFORMATION, FOR AS LONG AS WE CONTINUE TO USE THE INFORMATION IN CONFIDENCE, EVEN IF**

**EDITED OR REVISED, PLUS THREE YEARS. WE WILL RESPOND PROMPTLY AND IN GOOD FAITH TO YOUR INQUIRY ABOUT CONTINUED PROTECTION OF ANY CONFIDENTIAL INFORMATION.**

\* \* \*

**54. <u>DEFINITIONS</u>. UNLESS THE CONTEXT OF THEIR USE IN THIS AGREEMENT REQUIRES OTHERWISE, THE FOLLOWING WORDS AND PHRASES HAVE THE FOLLOWING MEANINGS WHEN USED IN INITIALLY-CAPITALIZED FORM IN THIS AGREEMENT.**

\* \* \*

e) <u>Confidential Information</u> means any trade secrets we own or protect and other proprietary information not generally known to the plumbing services industry including confidential portions of the Operations Manual and information we otherwise impart to you and your representatives in confidence. Confidential Information includes product and service instructions, product and service preparation instructions, proprietary software and other valuable property.

\* \* \*

(Emphasis in original).

59. In Sections 5(r) and 48 of the Franchise Agreement, Blue Ridge Plumbing agreed to pay 1 Tom Plumber's costs for enforcing the Franchise Agreement, the Termination Agreement, and any other agreement, including but not limited to attorneys' fees and costs, plus a 25% administration fee.

60. Blue Ridge Plumbing signed the Franchise Agreement knowing that it would have access to and become knowledgeable about and would acquire information regarding 1 Tom Plumber's trade secret, proprietary, and confidential information, including but not limited to 1 Tom Plumber's System Standards, Operations Manual, training, service, production, technology, marketing, advertising, promotion, and development materials, and other technical, financial, economic, and business data.

17

61.     1 Tom Plumber provided valuable consideration to Blue Ridge Plumbing for the contractual promises to which it agreed and to which 1 Tom Plumber satisfied all conditions precedent.

62.     Blue Ridge Plumbing agreed to treat 1 Tom Plumber's non-public information related to its Franchised System, System Standards, Operations Manual, training, service, production, technology, marketing, advertising, promotion, and development materials, and other technical, financial, economic, and business data, and other proprietary information as confidential, to be used only for the benefit of 1 Tom Plumber in Blue Ridge Plumbing's 1 Tom Plumber franchise.

### THE MANAGEMENT AGREEMENT

63.     On June 6, 2023, Michael Perdue, as on-site manager for the 1 Tom Plumber Asheville Location, executed the Management Agreement. A true and accurate copy of this Management Confidentiality and Non-Competition Agreement is attached as Exhibit 4.

64.     Per the terms of the Management Agreement, Michael Perdue agreed not to compete with 1 Tom Plumber during his employ with Blue Ridge Plumbing and for a two (2) year period thereafter for any competing entity at any location within the Operating Area in and around Asheville, North Carolina. *See* Exhibit 4, § 3.

65.     The Management Agreement that Michael Perdue entered into with 1 Tom Plumber provides in pertinent part as follows:

> 2.     Confidentiality Agreement. Manager acknowledges that, while employed by the Franchisee, Manager has and will receive certain confidential information and knowledge concerning business of the Company which the Company wishes to protect, including (without limitation) information, knowledge, know-how, product and service instructions, product and service preparation instructions, formulae, materials, equipment, techniques, systems, and other data relating to or comprising 1-Tom-Plumber franchise system. Confidential information includes the Operations Manual and other materials and information

18

supplied by Company to the Franchisee that is identified as confidential at the time of disclosure or before. Manager shall not reveal that confidential information to any other party, except the Company's or the Franchisee's independent public accountants, Manager's legal counsel (if that counsel also agrees to maintain the confidentiality of the confidential information), or as otherwise required by law. Manager shall not use or disclose the confidential information at any time for the purpose of competition with the Company, its successors and assigns, or Franchisee. When Manager's employment with Franchisee terminates for any reason, the Manager promptly shall surrender to Franchisee all papers, documents, writings and other property, electronic or otherwise, produced by Manager or coming into Manager's possession by or through Manager's employment with the Franchisee containing confidential information or related in any way to confidential information. All of the foregoing materials shall remain the property of the Company, its successors, or its assigns.

> 3. <u>Covenant Not to Compete</u>. During the term of Manager's employment with the Franchisee and for a period of 24 months after the end of Manager's employment with the Franchisee regardless of which party ends the employment relationship and regardless of the reason why the employment relationship ends, Manager shall not engage in, directly or indirectly as a principal, agent, trustee, employee, consultant, independent contractor or through any corporation, partnership, association, or other entity, a Competing Business at any location within a 10-mile radius of any 1-Tom-Plumber Unit location at which Manager worked or within a 10-mile radius of any then-existing 1-Tom-Plumber Unit location.

> 4. <u>Indemnification and Injunctive Relief</u>. Manager shall indemnify and hold the Company and the Franchisee harmless against any losses, damages, costs, expenses, claims or actions, including attorneys' fees and costs, proximately caused by any breach of this Agreement by Manager. Manager shall pay to the Company any compensation, profits or economic benefits realized by the Manager resulting from any breach of this Agreement. The Company shall have the right to injunctive and other equitable relief prohibiting the Manager from any violation or threatened violation of this Agreement, without posting any bond or security. Manager acknowledges that the restrictions in this Agreement are reasonable and necessary to protect the legitimate business interests of the Franchisee, and that the violation of the foregoing restrictions will lead to immediate and irreparable harm, for which injunctive relief is necessary.

* * *

66.     Michael Perdue signed the Management Agreement knowing that he would have access to and become knowledgeable about and would acquire information regarding 1 Tom Plumber's trade secret, proprietary, and confidential information, including but not limited to 1

Tom Plumber's System Standards, Operations Manual, training, service, production, technology, marketing, advertising, promotion, and development materials, and other technical, financial, economic, and business data.

67.     1 Tom Plumber provided valuable consideration to Michael Perdue for the contractual promises to which he agreed and to which 1 Tom Plumber satisfied all conditions precedent.

68.     Michael Perdue agreed to treat 1 Tom Plumber's non-public information related to its Franchised System, System Standards, Operations Manual, training, service, production, technology, marketing, advertising, promotion, and development materials, and other technical, financial, economic, and business data, and other proprietary information as confidential, to be used only for the benefit of 1 Tom Plumber in Blue Ridge Plumbing's 1 Tom Plumber franchise.

**DEFENDANTS BREACH THE FRANCHISE AGREEMENT AND MANAGEMENT AGREEMENT & CONSPIRE TO DIVERT, AND ACTUALLY DIVERT, 1 TOM PLUMBER BUSINESS AND PAYMENTS**

69.     Upon information and belief, Blue Ridge Plumbing and the Warren Defendants used the 1 Tom Plumber Asheville Location as a "store front" to surreptitiously solicit, divert, convert, accept, intercept, and route customer leads, 1 Tom Plumber estimates, other plumbing-related business opportunities, and sales receipts belonging to 1 Tom Plumber, to one or more of the Defendant Businesses to avoid the payment of royalties, commissions, and other fees and charges owed to 1 Tom Plumber by Blue Ridge Plumbing.  *See* September 13, 2024, Termination Letter, a true and accurate copy of which is attached hereto as Exhibit 5.

70.     Blue Ridge Plumbing and the Warren Defendants did so by collectively acting in concert and complicity with themselves, Michael Perdue, Trina Ellison, and one or more of the Defendant Businesses to carry out this scheme, by placing 1 Tom Plumber revenues into financial

accounts belonging to one or more of the Defendant Business instead of the financial account for the 1 Tom Plumber Asheville Location.  *See id.*

71.     Upon information and belief, Blue Ridge Plumbing also failed, refused, and/or otherwise neglected to properly log its Plumbing Services into the "Service Titan" system as required.  *See id.*

72.     Upon information and belief, Blue Ridge Plumbing permitted others to collect monies due to the 1 Tom Plumber Asheville Location.  *See id.*

73.     Upon information and belief, Blue Ridge Plumbing wrongfully intermingled one or more of the other Defendant Businesses' operations with the operation of the 1 Tom Plumber Asheville Location.  *See id.*

74.     Upon information and belief, Blue Ridge Plumbing further failed to maintain records to properly pay commission to its employees.  *See id.*

75.     Upon information and belief, Blue Ridge Plumbing failed to follow 1 Tom Plumber protocols in the manner in which Blue Ridge Plumbing provided services to customers.  *See id.*

76.     Upon information and belief, Blue Ridge Plumbing failed to accurately report gross sales. *See id.*

77.     Upon information and belief, Blue Ridge Plumbing failed to abide by the terms of the non-competition obligations under the Franchise Agreement by operating one or more of the Defendant Businesses in the Operating Area in and around Asheville, North Carolina.  *See id.*

78.     Through these acts and omissions, Blue Ridge Plumbing breached and violated terms and provisions of the Franchise Agreement.

<u>**FRANCHISE TERMINATION**</u>

79.     On September 13, 2024, and as a result of the above-described incurable, material breaches of the Franchise Agreement, among other breaches, 1 Tom Plumber immediately terminated Blue Ridge Plumbing's right to operate the 1 Tom Plumber Asheville Location.  *See* Exhibit 5.

80.     As set forth in the Termination Letter, 1 Tom Plumber directed Blue Ridge Plumbing to pay, within 30 days, all amounts due and payable to 1 Tom Plumber.  *See id*.

81.     As set forth in the Termination Letter, 1 Tom Plumber further directed Blue Ridge Plumbing to immediately cease the operation of the 1 Tom Plumber Asheville Location and to comply with all post-termination provisions set forth in the Franchise Agreement, among other post-termination obligations, including but not limited to ceasing to use and retuning 1 Tom Plumber's trade secret, proprietary, and confidential information and abiding by Blue Ridge Plumbing's confidentiality and non-competition obligations, such as providing any Plumbing Services, directly and/or indirectly, for the next two years.  *See id*.

82.     Upon information and belied, Blue Ridge Plumbing and the Warren Defendants continue to use 1 Tom Plumber's trade secret, proprietary, and confidential information.

83.     Additionally, on October 10, 2024, 1 Tom Plumber, Blue Ridge Plumbing, and the Warren Defendants entered into the Termination Agreement, wherein Blue Ridge Plumbing acknowledged it breached and violated the Franchise Agreement:

> Following their entry into the **Franchise Agreements** and **Guaranties**, **Franchisee** breached and violated certain terms and provisions of the **Franchise Agreements**. As a direct and proximate result, **Franchisor** elected to terminate **Franchisee**'s right to operate its **1 Tom Plumber businesses**, and to terminate both of **Franchisee**'s 1 Tom Plumber Franchises and the right to operate its **1 Tom Plumber Businesses**.

*See* Exhibit 2, Recital D (emphasis in original).

84.    As set forth in the Termination Agreement, Blue Ridge Plumbing and the Warren Defendants surrendered all rights, titles, and interests in the 1 Tom Plumber Asheville Location, agreed to immediately cease operation of the 1 Tom Plumber Asheville Location, and agreed to comply with all provisions in the Franchise Agreement, including but not limited to the non-competition and confidentiality provisions. *See id.* at ¶ 1.

85.    Specifically, Blue Ridge Plumbing and the Warren Defendants agreed in pertinent part as follows:

> 8. Should **Franchisee** and/or **Guarantors** fail to comply with the "Covenants Not to Compete" as set forth in Paragraph 11 (Page 17) of the **Franchise Agreements**, the "Confidentiality Agreement" as provided for in Paragraph 12 (Page 18) of the **Franchise Agreements**, the "Obligations Upon Termination Or Expiration" as set forth in Paragraph 33 (Page 32), any other post franchise termination obligation set forth in the **Franchise Agreements**, or any other applicable provision of this **Franchise Termination Agreement** dealing with the cessation of the **1 Tom Plumber Businesses**, **Franchisee** and **Guarantors** shall be in default, ***and this Franchise Termination Agreement shall be void and Franchisor shall have all rights to all relief and to recover monetary and other damages against Franchisee and Guarantors as set forth in the Franchise Agreements and Guaranties***.

(Emphasis in original).

### DEFENDANTS' CONTINUED OPERATION IN VIOLATION OF NON-COMPETE OBLIGATIONS & CONTINUED DIVERSION OF 1 TOM PLUMBER BUSINESS AND PAYMENTS

86.    Upon information and belief, and despite their continuing non-competition obligations, Blue Ridge Plumbing and the Warren Defendants continue to provide Plumbing Services in the Operating Area in and around Asheville, North Carolina via one or more of the Defendant Businesses.

87.    Upon information and belief, Blue Ridge Plumbing and the Warren Defendants have intentionally diverted and converted one or more payments due and payable to 1 Tom Plumber by intercepting payments made to other 1 Tom Plumber franchises for Plumbing Services when those payments were inadvertently and mistakenly sent to the address previously associated

with the now-terminated and defunct 1 Tom Plumber Asheville Business, and Blue Ridge Plumbing and the Warren Defendants thereafter deposited such payments into one or more financial accounts owned by the Warren Defendants and/or the Defendant Businesses and refused to transfer the same funds to the one or more 1 Tom Plumber franchises entitled to receive those funds. True and accurate copies of emails to Blue Ridge Plumbing and/or the Warren Defendants regarding these payments, as well as copies of deposited checks and related invoices, are attached as Exhibit 6.

88. Because of Blue Ridge Plumbing and the Warren Defendants' on-going breaches of the Franchise Agreement and Termination Agreement, including but not limited to violations of their non-competition obligations, as well as the complicity of Michael Perdue, Trina Ellison, and/or the Defendant Businesses; there is no adequate remedy at law, and a temporary, preliminary, and permanent injunction is necessary to immediately prevent Blue Ridge Plumbing and the Warren Defendants from continuing to violate their agreements with 1 Tom Plumber.

## COUNT ONE – BREACH OF CONTRACT – ASSERTED AGAINST BLUE RIDGE PLUMBING & WARREN DEFENDANTS

89. Plaintiff hereby incorporates, as if fully rewritten herein, all allegations of its Complaint.

90. Blue Ridge Plumbing entered into the Franchise Agreement with 1 Tom Plumber. *See* Exhibit 1.

91. The Warren Defendants personally guaranteed Blue Ridge Plumbing's obligations under the Franchise Agreement, and therefore are liable to 1 Tom Plumber for the continuing acts and inactions of Blue Ridge Plumbing. *See* Exhibit 1, C-2.

92. The Franchise Agreement is reasonable, valid, and enforceable.

93. 1 Tom Plumber has complied with the terms and conditions of the Franchise Agreement.

94. Blue Ridge Plumbing and the Warren Defendants entered into the Termination Agreement with 1 Tom Plumber. *See* Exhibit 2.

95. The Termination Agreement is reasonable, valid, and enforceable.

96. 1 Tom Plumber has complied with the terms and conditions of the Termination Agreement.

97. Blue Ridge Plumbing breached the Franchise Agreement and Termination Agreement to the damage of 1 Tom Plumber by, among other things, operating its 1 Tom Plumber franchise and simultaneously providing Plumbing Services by one or more of the Defendant Businesses in the Operating Area in and around Asheville, North Carolina.

98. Blue Ridge Plumbing continues to  violate its contractual obligations to 1 Tom Plumber without justification.

99. As a direct and proximate results of Blue Ridge Plumbing's actions and/inactions, 1 Tom Plumber has been and continues to be damaged.

100. 1 Tom Plumber suffered and will continue to suffer immediate, substantial, and irreparable harm for which there is no adequate remedy at law.

## COUNT TWO – CONVERSION – ASSERTED AGAINST BLUE RIDGE PLUMBING & WARREN DEFENDANTS

101. Plaintiff hereby incorporates, as if fully rewritten herein, all allegations of its Complaint.

102. 1 Tom Plumber has, at all relevant times, been the owner of its trade secret, proprietary, and confidential information.

103. After the termination of their franchise, Blue Ridge Plumbing and the Warren Defendants did not immediately return all of 1 Tom Plumber's trade secret, proprietary, and confidential information. Instead, upon information and belief, Blue Ridge Plumbing and the Warren Defendants used, and continue to use, 1 Tom Plumber's trade secret, proprietary, and confidential information in the operation of the Defendant Businesses.

104. As described above and without knowledge or authorization of 1 Tom Plumber, Blue Ridge Plumbing and the Warren Defendants have unlawfully taken and converted 1 Tom Plumber's trade secret, proprietary, and confidential information that they knew belong to 1 Tom Plumber, to further their own and Defendant Businesses' interests and business opportunities to the detriment of 1 Tom Plumber.

105. To date, none of the Defendants have returned 1 Tom Plumber's confidential, proprietary information and property that continues to remain in their possession.

106. As a direct and proximate result of Defendants' actions, 1 Tom Plumber faces the immediate and irreparable loss of its trade secret, proprietary, and confidential information, the loss of its competitive position, the loss of business and customer goodwill, loss of sales, and the loss of its investment in time and energy in generating its confidential information. 1 Tom Plumber has no adequate remedy at law for these losses and no amount of money could compensate Oswald for these losses.

107. 1 Tom Plumber is entitled to a temporary restraining order and preliminary injunctive relief, enjoining and restraining Defendants and any other person or entity acting in aid or concert or in participation with them as set forth above in this Verified Complaint.

108.    As a direct and proximate result of Defendants' actions, 1 Tom Plumber has also been damaged in a monetary amount to be proven at trial, but which in no event is less than $75,000, as well as any attorney fees and costs associated with this action.

## COUNT THREE – UNJUST ENRICHMENT – ASSERTED AGAINST BLUE RIDGE PLUMBING & WARREN DEFENDANTS

109.    Plaintiff hereby incorporates, as if fully rewritten herein, all allegations of its Complaint.

110.    After the termination of their franchise, Blue Ridge Plumbing and the Warren Defendants did not immediately return all of 1 Tom Plumber's trade secret, proprietary, and confidential information.  Instead, upon information and belief, Blue Ridge Plumbing and the Warren Defendants used, and continue to use, 1 Tom Plumber's trade secret, proprietary, and confidential information in the operation of the Defendant Businesses.

111.    As described above and without knowledge or authorization of 1 Tom Plumber, Blue Ridge Plumbing and the Warren Defendants have unlawfully taken and used 1 Tom Plumber's trade secret, proprietary, and confidential information that they knew belong to 1 Tom Plumber, to further their own and Defendant Businesses' interests and business opportunities to the detriment of 1 Tom Plumber.

112.    To date, none of the Defendants have returned 1 Tom Plumber's confidential, proprietary information that continues to remain in their possession.

113.    Blue Ridge Plumbing and the Warren Defendants have taken, used, and disclosed 1 Tom Plumber's trade secret, proprietary, and confidential information that they knew belong to 1 Tom Plumber, and unlawfully benefitted from using 1 Tom Plumber's trade secret, proprietary, and confidential information to replicate 1 Tom Plumber's business model, develop and increase

the business opportunities of Defendant Businesses and themselves in unfair competition with 1 Tom Plumber.

114.     As a result of Blue Ridge Plumbing and the Warren Defendants' conduct, 1 Tom Plumber is entitled to monetary damages in excess of $75,000 for unjust enrichment for diverting business for 1 Tom Plumber franchises and payments due and payable to 1 Tom Plumber to the Defendant Businesses.

## COUNT FOUR – CONTRACTUAL INDEMNITY – ASSERTED AGAINST BLUE RIDGE PLUMBING & WARREN DEFENDANTS

115.     Plaintiff hereby incorporates, as if fully rewritten herein, all allegations of its Complaint.

116.     The Franchise Agreement contains an express indemnity clause that requires Blue Ridge Plumbing to reimburse 1 Tom Plumber for all costs associated with bringing this action to enforce its rights under the Franchise Agreement, including, but not limited to, reasonable attorney's fees.  *See* attached Exhibit 1.

117.     The Warren Defendants personally guaranteed Blue Ridge Plumbing's obligations under the Franchise Agreement, and therefore are liable to 1 Tom Plumber for the continuing acts and inactions of Blue Ridge Plumbing.  *See* Exhibit 1, C-2.

118.     Blue Ridge Plumbing and the Warren Defendants have breached the Franchise Agreement as previously described herein.

119.     As a consequence of the foregoing, 1 Tom Plumber has suffered and will continue to suffer significant harm, loss and other injuries, and has further incurred significant costs in bringing this action to enforce its rights under the Franchise Agreement, including, but not limited to, reasonable attorney's fees, expenses, and costs for which Blue Ridge Plumbing and the Warren Defendants are responsible to 1 Tom Plumber.

## COUNT FIVE – BREACH OF CONTRACT – ASSERTED AGAINST MCHAEL PERDUE

120.     Plaintiff hereby incorporates, as if fully rewritten herein, all allegations of its Complaint.

121.     Michael Perdue entered into the Management Agreement with 1 Tom Plumber. *See* Exhibit 4.

122.     The Management Agreement is reasonable, valid, and enforceable.

123.     1 Tom Plumber has complied with all of the terms and conditions of the Management Agreement.

124.     Michael Perdue breached the Management Agreement to the damage of 1 Tom Plumber by, among other things, being employed by one or more of the Defendant Businesses that operate within the Operating Area in and around Asheville, North Carolina.

125.     Michael Perdue continues to  violate his contractual obligations to 1 Tom Plumber without justification.

126.     As a direct and proximate results of Michael Perdue's actions and/inactions, 1 Tom Plumber has been and continues to be damaged.

127.     1 Tom Plumber suffered and will continue to suffer immediate, substantial, and irreparable harm for which there is no adequate remedy at law.

## COUNT SIX – CONTRACTUAL INDEMNITY – ASSERTED AGAINST MICHAEL PERDUE

128.     Plaintiff hereby incorporates, as if fully rewritten herein, all allegations of its Complaint.

129.     The Management Agreement contains an express indemnity clause that requires Michael Perdue to reimburse 1 Tom Plumber for all costs associated with bringing this action to

enforce its rights under the Management Agreement, including, but not limited to, reasonable attorney's fees. *See* attached Exhibit 4.

130. Michael Perdue has breached the Management Agreement as previously described herein.

131. As a direct and proximate cause of the foregoing, 1 Tom Plumber has suffered and will continue to suffer significant harm, loss, and other injuries, and has further incurred significant costs in bringing this action to enforce its rights under the Management Agreement, including, but not limited to, reasonable attorney's fees, expenses, and costs for which Michael Perdue is liable to 1 Tom Plumber.

## COUNT SEVEN – MISAPPROPRIATION AND USE OF TRADE SECRETS UNDER THE OHIO UNIFORM TRADE SECRETS ACT, R.C. §§ 1333.61, et seq. – ASSERTED AGAINST BLUE RIDGE PLUMBING, WARREN DEFENDANTS, & MICHAEL PERDUE

132. Plaintiff hereby incorporates, as if fully rewritten herein, all allegations of its Complaint.

133. 1 Tom Plumber enjoys a presumption of secrecy regarding its trade secret and confidential information, as 1 Tom Plumber took measures to prevent its trade secret, proprietary, and confidential information from being available to persons other than those who entered into franchise agreements and management agreements.

134. The confidential and proprietary information to which Blue Ridge Plumbing and the Warren Defendants were exposed and had access while operating the 1 Tom Plumber Asheville Location, as described herein, was not publicly known, has been generated and cultivated by 1 Tom Plumber over many years, gives 1 Tom Plumber a substantial competitive advantage over its competitors, and constitutes trade secrets within the meaning of Section 1333.61(D) of the Ohio Revised Code.

135.     The confidential and proprietary information to which Blue Ridge Plumbing, the Warren Defendants, and Perdue was exposed and had access while employed at the 1 Tom Plumber Asheville Location, as described in this Verified Complaint, was not publicly known, has been generated and cultivated by 1 Tom Plumber over many years, gives 1 Tom Plumber a substantial competitive advantage over its competitors and constitutes trade secrets within the meaning of Section 1333.61(D) of the Ohio Revised Code.

136.     This information is a compilation of information which derives substantial actual and independent and/or potential economic value while not being generally known or readily ascertainable, through proper means, to competitors such as Defendant Businesses who can profit from its explicit, implicit, and/or inevitable use or disclosure.

137.     1 Tom Plumber has taken measures and made efforts that are reasonable under the circumstances to maintain the secrecy of the information that Blue Ridge Plumbing, the Warren Defendants, and Perdue threaten to, inevitably will, and/or actually have misappropriated and converted from 1 Tom Plumber.

138.     This valuable confidential business information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, 1 Tom Plumber competitors and the general public.

139.     This confidential information has been developed by 1 Tom Plumber for several years by virtue of 1 Tom Plumber expending considerable time, effort, and expense.

140.     1 Tom Plumber has taken reasonable steps to maintain the secrecy of this confidential information.

141.     This was done by 1 Tom Plumber so as to create and maintain this confidential information for the exclusive benefit of 1 Tom Plumber.

142. As 1 Tom Plumber franchisee, Blue Ridge Plumbing, the Warren Defendants, and Perdue had access to and obtained comprehensive knowledge of 1 Tom Plumber's trade secrets and confidential information.

143. Upon information and belief, and while operating the 1 Tom Plumber franchise and after termination thereof, Blue Ridge Plumbing and the Warren Defendants operated one or more of the Defendant Businesses.

144. Upon information and belief, Michael Perdue continues to be employed by Blue Ridge Plumbing and/or the Defendant Businesses.

145. Upon information and belief, Blue Ridge Plumbing, the Warrens, and/or Michael Perdue will and/or have disclosed 1 Tom Plumber's trade secrets and confidential information to the Defendant Businesses, its employees, agents, and/or other affiliated persons.

146. Upon information and belief, Blue Ridge Plumbing, the Warrens, and/or Michael Perdue will and/or are wrongfully using 1 Tom Plumber's trade secrets and confidential information to unfairly compete with 1 Tom Plumber.

147. Upon information and belief, Blue Ridge Plumbing, the Warrens, and/or Michael Perdue will and/or have explicitly or implicitly used, disclosed, and/or inevitably misappropriated and converted confidential and trade secret information concerning the methodologies, software, programs, instructions, and other property of 1 Tom Plumber and as described in the Franchise Agreement.

148. 1 Tom Plumber has no adequate remedy at law to redress these misappropriations of its trade secrets and faces immediate and irreparable injury, loss, or damage as a result of the misappropriation of its confidential and proprietary trade secrets.

149.    As a direct and proximate result of Blue Ridge Plumbing, the Warrens, and/or Michael Perdue's actions, 1 Tom Plumber faces the immediate and irreparable loss of its trade secret, proprietary, and confidential information, the loss of its competitive position, the loss of business and customer goodwill, loss of sales, and the loss of its investment in time and energy in generating its confidential information. 1 Tom Plumber has no adequate remedy at law for these losses and the amount of monies to compensate 1 Tom Plumber for these losses is incalculable.

150.    1 Tom Plumber is entitled to a temporary restraining order and preliminary and permanent injunctive relief, enjoining, and restraining Blue Ridge Plumbing, the Warrens, and Michael Perdue and any other person or entity acting in aid or concert, or in participation with them as set forth in this Verified Complaint.

151.    As a direct and proximate result of Blue Ridge Plumbing, the Warrens, and/or Michael Perdue's actions, 1 Tom Plumber has been damaged in a monetary amount to be proven at trial, but which in no event is less than $75,000, as well as any attorney fees and costs associated with this action, for which Blue Ridge Plumbing, the Warrens, and Michael Perdue are jointly and severally liable.

### COUNT EIGHT – MISAPPROPRIATION AND USE OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT – ASSERTED AGAINST BLUE RIDGE PLUMBING, WARREN DEFENDANTS & MICHAEL PERDUE

152.    Plaintiff hereby incorporates, as if fully rewritten herein, all allegations of its Complaint.

153.    The confidential and proprietary information to which Blue Ridge Plumbing and the Warren Defendants were exposed and had access while operating the 1 Tom Plumber Asheville Location, as described herein, was not publicly known, has been generated and cultivated by 1

Tom Plumber over many years, gives 1 Tom Plumber a substantial competitive advantage over its competitors, and constitutes trade secrets within the meaning of 18 U.S.C. §1839(3).

154.    The confidential and proprietary information to which Michael Perdue was exposed and had access while employed at the 1 Tom Plumber Asheville Location, as described in this Verified Complaint, was not publicly known, has been generated and cultivated by 1 Tom Plumber over many years, gives 1 Tom Plumber a substantial competitive advantage over its competitors and constitutes trade secrets within the meaning of 18 U.S.C. §1839(3).

155.    This information is a compilation of information which derives substantial actual and independent and/or potential economic value while not being generally known or readily ascertainable, through proper means, to competitors such as Defendant Businesses who can profit from its explicit, implicit and/or inevitable use or disclosure.

156.    1 Tom Plumber has taken measures and made efforts that are reasonable under the circumstances to maintain the secrecy of the information that Blue Ridge Plumbing and the Warren Defendants threaten to, inevitably, will and/or actually have misappropriated and converted from 1 Tom Plumber.

157.    This valuable confidential business information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, 1 Tom Plumber competitors and the general public.

158.    This confidential information has been developed by 1 Tom Plumber for several years by virtue of 1 Tom Plumber expending considerable time, effort, and expense.

159.    1 Tom Plumber has taken reasonable steps to maintain the secrecy of this confidential information.

160. This was done by 1 Tom Plumber so as to create and maintain this confidential information for the exclusive benefit of 1 Tom Plumber.

161. As 1 Tom Plumber franchisee, Blue Ridge Plumbing and the Warren Defendants had access to and obtained comprehensive knowledge of 1 Tom Plumber's trade secrets and confidential information.

162. Upon information and belief, and while operating the 1 Tom Plumber franchise and after termination thereof, Blue Ridge Plumbing and the Warren Defendants operated one or more of the Defendant Businesses.

163. Upon information and belief, Michael Perdue continues to be employed by Blue Ridge Plumbing and/or the Defendant Businesses.

164. Upon information and belief, Blue Ridge Plumbing, the Warrens, and/or Michael Perdue will and/or have disclosed 1 Tom Plumber's trade secrets and confidential information to the Defendant Businesses, its employees, agents, and/or other affiliated persons.

165. Upon information and belief, Blue Ridge Plumbing, the Warrens, and/or Michael Perdue will and/or are wrongfully using 1 Tom Plumber's trade secrets and confidential information to unfairly compete with 1 Tom Plumber.

166. Upon information and belief, Blue Ridge Plumbing, the Warrens, and/or Michael Perdue will and/or have explicitly or implicitly used, disclosed, and/or inevitably misappropriated and converted confidential and trade secret information concerning the methodologies, software, programs, instructions, and other property of 1 Tom Plumber and as described in the Franchise Agreement.

167. 1 Tom Plumber has no adequate remedy at law to redress these misappropriations of its trade secrets and faces immediate and irreparable injury, loss, or damage as a result of the misappropriation of its confidential and proprietary trade secrets.

168. As a direct and proximate result of Blue Ridge Plumbing, the Warrens, and/or Michael Perdue's actions, 1 Tom Plumber faces the immediate and irreparable loss of its trade secret, proprietary, and confidential information, the loss of its competitive position, the loss of business and customer goodwill, loss of sales, and the loss of its investment in time and energy in generating its confidential information. 1 Tom Plumber has no adequate remedy at law for these losses and it is not possible to calculate amount of money owed 1 Tom Plumber for these losses.

169. 1 Tom Plumber is entitled to a temporary restraining order and preliminary and permanent injunctive relief, enjoining, and restraining Blue Ridge Plumbing, the Warrens, and Michael Perdue and any other person or entity acting in aid or concert, or in participation with them as set forth in this Verified Complaint.

170. As a direct and proximate result of Blue Ridge Plumbing, the Warrens, and/or Michael Perdue's actions, 1 Tom Plumber has been damaged in a monetary amount to be proven at trial, but which in no event is less than $75,000, as well as any attorney fees and costs associated with this action, for which Blue Ridge Plumbing, the Warrens, and Michael Perdue are jointly and severally liable.

## COUNT NINE – UNFAIR COMPETITION – ASSERTED AGAINST BLUE RIDGE PLUMBING & WARREN DEFENDANTS

171. Plaintiff hereby incorporates, as if fully rewritten herein, all allegations of its Complaint.

172. Blue Ridge Plumbing and the Warren Defendants have knowledge of the Franchise Agreement with 1 Tom Plumber and/or the terms and conditions contained therein.

173.    By operating one or more of the Defendant Businesses during the franchise term and thereafter, Blue Ridge Plumbing and the Warren Defendants competed and will continue to compete with 1 Tom Plumber, and will continue to actually, threaten, and/or inevitably divulge 1 Tom Plumber's trade secrets to the Defendant Businesses and others.

174.    Blue Ridge Plumbing and the Warren Defendants have intentionally, willfully, wantonly, and/or maliciously breached and/or intentionally, willfully, wantonly, and/or maliciously continues to breach the Franchise Agreement with 1 Tom Plumber.

175.    Blue Ridge Plumbing and the Warren Defendants' threatened, inevitable, and/or actual use, disclosure and/or misappropriation of 1 Tom Plumber's confidential and trade secret information, and Blue Ridge Plumbing and the Warren Defendants' deliberate, intentional, and knowing violation of the contractual obligations they owe to 1 Tom Plumber comprise acts of unfair competition.

176.    Due to the actions/inactions of Blue Ridge Plumbing and the Warren Defendants, 1 Tom Plumber has been and will continue to be damaged and deprived of the benefits of which it is entitled pursuant to the Franchise Agreement.

177.    As a direct and proximate result of their unfair competition, Blue Ridge Plumbing and the Warren Defendants have been and continue to be unjustly enriched to the damage of 1 Tom Plumber, and Blue Ridge Plumbing and the Warren Defendants must disgorge all gain derived from their wrongful acts.

178.    Blue Ridge Plumbing and the Warren Defendants' acts of unfair competition have proximately caused injury and damage to 1 Tom Plumber.

**COUNT TEN – UNFAIR COMPETITION – ASSERTED AGAINST MICHAEL PERDUE**

179.     Plaintiff hereby incorporates, as if fully rewritten herein, all allegations of its Complaint.

180.     Michael Perdue has knowledge of the Franchise Agreement with 1 Tom Plumber and/or the terms and conditions contained therein.

181.     Michael Perdue also has knowledge of the Management Agreement with 1 Tom Plumber and/or the terms and conditions contained therein.

182.     While employed with one or more of the Defendant Businesses, Michael Perdue will compete with 1 Tom Plumber, and will continue to actually, threatened and/or inevitably divulge 1 Tom Plumber's trade secrets to the Defendant Businesses and others.

183.     Michael Perdue has intentionally, willfully, wantonly, and/or maliciously breached and/or intentionally, willfully, wantonly, and/or maliciously continues to breach the Management Agreement with 1 Tom Plumber.

184.     Michael Perdue's threatened, inevitable, and/or actual use, disclosure and/or misappropriation of 1 Tom Plumber's confidential and trade secret information, and Michael Perdue's deliberate, intentional, and knowing violation of the contractual obligations he owes to 1 Tom Plumber comprise acts of unfair competition.

185.     Due to the actions/inactions of Michael Perdue, 1 Tom Plumber has been and will continue to be damaged and deprived of the benefits of which it is entitled pursuant to the Franchise Agreement and Management Agreement.

186.     As a direct and proximate result of his unfair competition, Michael Perdue has been and continues to be unjustly enriched to the damage of 1 Tom Plumber, and Michael Perdue must disgorge all gain derived from his wrongful acts.

187.    Michael Perdue's acts of unfair competition have proximately caused injury and damage to 1 Tom Plumber.

### COUNT ELEVEN – TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS RELATIONSHIPS – ASSERTED AGAINST ALL DEFENDANT BUSINESSES

188.    Plaintiff hereby incorporates, as if fully rewritten herein, all allegations of its Complaint.

189.    The Franchise Agreement was a valid contract between 1 Tom Plumber and Blue Ridge Plumbing.

190.    The Defendant Businesses, by and though the Warren Defendants, knew of the Franchise Agreement and knew of 1 Tom Plumber's business relationship with customers and prospective customers.

191.    The Defendant Businesses, without authorization to do so and in concert with Michael Perdue, Trina Ellison, and/or the Warren Defendants, acted for the purpose of appropriating the benefits of the Franchise Agreement by soliciting, diverting, converting, accepting, intercepting, and routing customer leads, 1 Tom Plumber estimates, other plumbing-related business opportunities, and sales receipts belonging to 1 Tom Plumber, to themselves.

192.    The Defendant Businesses, in concert with Michael Perdue, Trina Ellison, and/or the Warren Defendants, engaged in conduct described herein to avoid the payment of royalties, commissions, and other fees and charges owed to 1 Tom Plumber by Blue Ridge Plumbing, the sole purpose of which was to harm to 1 Tom Plumber.

193.    The Defendant Businesses, by and though the Warren Defendants, intended to cause a disruption of the performance of the Franchise Agreement.

194. The Defendant Businesses, by and though the Warren Defendants, actually caused a disruption of the performance of the Franchise Agreement.

195. As a direct and proximate result of Defendants' actions, 1 Tom Plumber has been damaged in a monetary amount to be proven at trial, but which in no event is less than $75,000, as well as any attorney fees and costs associated with this action, for which Defendants are jointly and severally liable.

## COUNT TWELVE – CIVIL CONSPIRACY – ASSERTED AGAINST ALL DEFENDANTS

196. Plaintiff hereby incorporates, as if fully rewritten herein, all allegations of its Complaint.

197. Defendants purposely conspired and agreed together to unlawfully, fraudulently, and/or tortiously cause 1 Tom Plumber to suffer serious economic harm without a reasonable or lawful excuse for doing so by taking, accessing, retaining and using 1 Tom Plumber's trade secret, proprietary, and confidential information for the benefit of themselves in violation of Ohio and Federal law, in violation the Franchise Agreement and Management Agreement, and in violation of Blue Ridge Plumbing and the Warren Defendants' fiduciary and loyalty duties to 1 Tom Plumber.

198. Defendants purposely conspired and agreed together to unlawfully, fraudulently, and/or tortiously cause 1 Tom Plumber to suffer serious economic harm without a reasonable or lawful excuse for doing so by developing a scheme to solicit, divert, convert, accept, intercept, and route customer leads, 1 Tom Plumber estimates, other plumbing-related business opportunities, and sales receipts belonging to 1 Tom Plumber, to themselves in order to avoid the payment of royalties, commissions, and other fees and charges owed to 1 Tom Plumber by Blue Ridge Plumbing and in violation the Franchise Agreement.

199.    As a direct and proximate result of this tortious and fraudulent conduct Defendants, 1 Tom Plumber has suffered and will continue to suffer significant harm, loss, and other injuries for which Defendants are jointly and severally liable.

## COUNT THIRTEEN – INJUNCTIVE RELIEF

200.    Plaintiff hereby incorporates, as if fully rewritten herein, all allegations of its Complaint.

201.    Federal Civil Rule 65 allows this Court to issue temporary and preliminary injunctive relief under the circumstances verified in this Complaint.

202.    Further, under the terms of R.C. 1333.62(A), 1 Tom Plumber has the statutory right to obtain injunctive relief under the circumstances verified in this Complaint, and this Court may enjoin Defendants' unlawful activities for a reasonable time in order to eliminate the commercial advantage Defendants have derived from the misappropriation.

203.    In this case, 1 Tom Plumber submits the specific facts referenced in this Verified Complaint justify injunctive relief.

204.    As detailed in this Verified Complaint, Blue Ridge Plumbing and the Warren Defendants have committed multiple breaches of the Franchise Agreement and have breached their fiduciary duties as franchise owners, continue to breach the Franchise agreement and violate R.C. 1333.61, et seq., and continue to possess, disclose, and use 1 Tom Plumber trade secret, proprietary, and confidential information.

205.    As detailed in this Verified Complaint, Michael Perdue has committed multiple breaches of the Management Agreement and has breached his fiduciary duties as franchisees, continues to violate the Management Agreement and R.C. 1333.61, et seq., and continues to possess, disclose, and use 1 Tom Plumber trade secret, proprietary, and confidential information.

41

206. As detailed in this Verified Complaint, the Defendant Businesses continue to tortiously interfere with 1 Tom Plumber's North Carolina customers and franchises, as well as 1 Tom Plumber's Franchise Agreement with Blue Ridge Plumbing.

207. Blue Ridge Plumbing and the Warren Defendants' unlawful misappropriation, retention, and use of 1 Tom Plumber's trade secret, proprietary, and confidential information extends to the Defendant Businesses all of which now are direct competitors of 1 Tom Plumber.

208. The Defendant Businesses have already used 1 Tom Plumber's protected information in direct competition with 1 Tom Plumber. This has included using 1 Tom Plumber's trade secret, proprietary, and confidential information to compete unfairly and to contact and solicit 1 Tom Plumber's customers and prospects. Further use of 1 Tom Plumber's trade secret, proprietary, and confidential information will jeopardize 1 Tom Plumber's ability to fairly compete in the marketplace and give Defendants an unfair and unlawful advantage.

209. As detailed in this Verified Complaint, Defendants have engaged in conduct for which 1 Tom Plumber has no adequate remedy at law and faces immediate and irreparable injury, loss, or damage, including but not limited to, 1 Tom Plumber's loss of its trade secret, proprietary, and confidential information, the loss of its competitive position, the loss of business and customer goodwill, loss of sales, and the loss of its investment in time and energy in generating its confidential information. It is impossible to calculate the money that could compensate 1 Tom Plumber for these losses.

210. Such harm is irreparable because it is impossible to determine the impact that will occur or to measure the full extent of monetary damages that 1 Tom Plumber will suffer.

211.    An injunction against Defendants will serve the public interest in enforcing valid restrictive covenants and preventing and enjoining misappropriation of trade secrets and other confidential business information.

212.    For these reasons, 1 Tom Plumber is entitled to a temporary restraining order and preliminary injunctive relief, enjoining, and restraining Defendants and any other person or entity acting in aid or concert, or in participation with them as follows: (a) cease and desist their employment and/or other relationship with the Defendant Businesses within the Operating Area in and around Asheville, North Carolina; (b) cease and desist from threatened, inevitable and/or actual disclosure, dissemination, and/or use of 1 Tom Plumber's trade secrets and confidential information; (c) cease and desist from any other or further breach of the non-compete, confidentiality provisions in the Franchise Agreement and Management Agreement: and (d) cease and desist from otherwise wrongfully competing with 1 Tom Plumber.

## DAMAGES

WHEREFORE, Plaintiff, 1 Tom Plumber Global, Inc., respectfully requests that this Court enter judgment in its favor and against Defendants on the Complaint as follows:

1.    That this Court temporarily, preliminarily, and permanently enjoin and restrain Defendants and any other person or entity acting in aid or concert, or in participation with them as follows:

(a)    Prohibiting Blue Ridge Plumbing and the Warren Defendants from engaging in any business that provides Plumbing Services within a 40-mile from the nearest point of the operating area for the 1 Tom Plumber Asheville Location for a period of two (2) years;

43

(b) Prohibiting Michael Perdue from engaging in any business that provides Plumbing Services within the operating area for the 1 Tom Plumber Asheville Location for a period of two (2) years;

(c) Prohibiting Blue Ridge Plumbing and the Warren Defendants from engaging in any other conduct that would otherwise violate the Franchise Agreement;

(d) Prohibiting Michael Perdue from engaging in any other conduct that would otherwise violate the Franchise Agreement;

(e) Prohibiting Defendants and any other person or entity acting in aid or concert, or in participation with them from interfering with 1 Tom Plumber's business and/or contracts;

2. That this Court require Defendants and any other person or entity acting in aid or concert, or in participation with them, to immediately return all of 1 Tom Plumber's property, keeping no copy;

3. That this Court require Defendants to provide an accounting of all profits, compensation, commission, remuneration, and other benefits said Defendants have obtained by and through the activities of the Business Defendants as described herein;

4. That this Court require Defendants and any other person or entity acting in aid or concert, or in participation with them, to immediately return any and all monies inadvertently and mistakenly sent to the address previously associated with the now-terminated and defunct 1 Tom Plumber Asheville Business that Blue Ridge Plumbing and the Warren Defendants into one or more financial accounts owned by the Warren Defendants and/or the Defendant Businesses;

5. That 1 Tom Plumber be awarded liquidated damages

6. That 1 Tom Plumber be awarded prejudgment interest;

44

7.      That 1 Tom Plumber be awarded its reasonable attorneys' fees and costs; and

8.      Such other relief in 1 Tom Plumber's favor that the Court deems just and required under the circumstances of this case.

                                        Respectfully submitted,

                                        */s/ Melissa A. Springer*
                                        Curtis L. Cornett (0062116)
                                        Melissa A. Springer (0097978)
                                        CORS & BASSETT, LLC
                                        201 East Fifth Street
                                        PNC Center, Suite 900
                                        Cincinnati, OH 45202
                                        Tel: (513) 852-8200 || Fax: (513) 852-8222
                                        clc@corsbassett.com
                                        mas@corsbassett.com

                                        David L. Prem (0037902)
                                        1019 Main Street
                                        Cincinnati, OH 45202
                                        Tel: (513) 381-1234 || Fax: (513) 381-1255
                                        attorney21@fuse.net

                                        ***Counsel for Plaintiff***
                                        ***1-Tom Plumer Global, Inc.***

## VERIFICATION

STATE OF OHIO        :
                           : ss

COUNTY OF _Ham. 1/ON_   :

I swear that the facts recited in the foregoing Verified Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, and Other Relief are true and correct to the best of my knowledge, information, and belief.

_____

Rocky Hensley
Chairman, 1 Tom Plumber Global Inc.

Subscribed to and sworn before me this _9th_ day of ____June____, 2025.

_____
Notary Public
My Commission expires: _____

DAVID L. PREM
Attorney at Law
Notary Public, State of Ohio
My Commission Has No Expiration
Date. Section 147.03 O.R.C.